IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| DAVID P. SHURLAND,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:18cv770 (REP) |
| | ) | |
| AIR FORCE BOARD FOR CORRECTION | ) | |
| OF MILITARY RECORDS, | ) | |
|     Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Plaintiff David P. Shurland ("Plaintiff"), proceeding *pro se*, brings this action against the

Air Force Board for Correction of Military Records ("Defendant" or the "Board") pursuant to the

Administrative Procedures Act ("APA"), seeking judicial review of the Board's decision to deny

his request for a retroactive medical retirement with a disability rating of greater than 50

percent.[1]  This matter comes before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) on Defendant's Motion to Dismiss (ECF No. 9), or, in the alternative,

Motion for Summary Judgment (ECF No. 10).

---

[1]     Because Plaintiff proceeds *pro se*, the Court construes Plaintiff's Complaint liberally.
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).
Although Plaintiff does not cite to specific statutory provisions that entitle him to relief, Plaintiff
appears to advance his claim under the APA, seeking judicial review of the Board's decision to
deny his Application for the Correction of Military Records.  Indeed, § 702 of the APA states
that that "[a] person suffering legal wrong because of agency action, or adversely affected or
aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review
thereof."  5 U.S.C. § 702.  Moreover, other courts reviewing military review board decisions
have similarly applied the APA's framework.  *Downey v. Dept. of the Army*, 110 F. Supp. 3d 676
(E.D. Va. 2015); *Lanier-Finn v. Dept. of Army*, 963 F. Supp. 2d 476 (S.D. Md. 2013).

For the reasons set forth below, the Court recommends that Defendant's Motion to Dismiss (ECF No. 9) be DENIED, and that Defendant's Motion for Summary Judgment (ECF No. 10) be GRANTED.

## I.    BACKGROUND

In considering a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6), the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.2d 1130, 1134 (4th Cir. 1993). However, the Court need not accept the plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although as a general rule, extrinsic evidence should not be considered at the motion to dismiss stage, the Fourth Circuit has consistently held that when a defendant includes an attachment with a motion to dismiss, "a court may consider [the attachment] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). Because Plaintiff does not challenge the authenticity of the administrative record attached as exhibits to Defendant's Memorandum in Support, and because the administrative record proves integral to Plaintiff's claims, the Court also relies on the administrative record in resolving Defendant's Motion to Dismiss. (Exs. 1 & 2 to Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("AR") (ECF Nos. 11-1, 11-2).) The Court likewise accepts the administrative record attached to Defendant's Memorandum as the undisputed facts for the purposes of resolving Defendant's Motion for Summary Judgment. *Chan v. USCIS*, 141 F. Supp. 3d 461, 463 (W.D. N.C. 2015) ("[T]he administrative record provides the complete factual predicate for the court's review." (quoting

2

*Krichbaum v. Kelley*, 844 F. Supp. 1107, 1110 (W.D. Va. 1994), *aff'd*, 61 F.3d 900 (4th Cir.1995))); *see also LivinRite, Inc. v. Azur*, 386 F. Supp. 3d 644, 650 (E.D. Va. 2019) (explaining that in considering a motion for summary judgment based on an underlying administrative record, unless the record is somehow contradicted, "the presence or absence of a genuine dispute of material fact is not an issue"). Based on these standards, the Court accepts the following facts.

### A.     Plaintiff's Request for Correction of His Military Records.

Plaintiff entered the United States Air Force on February 19, 1969, and served until December 2, 1975, at which point the Air Force honorably discharged him. (AR at 54-56.) The Air Force classified Plaintiff's discharge as "Involuntary discharge — Unsuitability, personality disorder," pursuant to Air Force Manual ("AFM") § 39-12.[2] (AR at 56-57.)

Nearly thirty-five years later, on August 18, 2010, Plaintiff submitted an application to the Board for the correction of his military records, requesting that the Board: (1) properly recognize his "heroic" actions in response to a military base fire, during which he helped to save the life of a fellow serviceman; (2) correct his record to reflect a medical discharge instead of an administrative discharge for unsuitability; and, (3) provide him with copies of records regarding his court-martial, evaluation by a sanity board and the Air Force's subsequent decision to drop the court-martial charges. (AR at 138, 142.)

On June 23, 2011, the Board completed its evaluation and denied Plaintiff's application as untimely. (AR at 141.) Specifically, because Plaintiff failed to file his petition within three years of discovering the alleged error or injustice in his military records — as required by 10

---

[2]     AFM § 39-12 states, in relevant part, that "[a]n airman is subject to discharge for unsuitability when one or more of the conditions noted below exist . . . (b) Personality Disorder ... which interferes with member's ability to adequately perform duties."

U.S.C. § 1552 — the Board found that Plaintiff had filed an untimely application. (AR at 141.)

Moreover, because Plaintiff did not demonstrate a "plausible reason for the delay in filing" nor

present "issues of error or injustice which require resolution on the merits," the Board concluded

that it was not "in the interest of justice to excuse [Plaintiff's] failure to file in a timely manner."

(AR at 141.) With regard to Plaintiff's request for military personnel records, the Board relayed

to Plaintiff that he should contact the National Personnel Records Center, the proper custodian of

the requested records. (AR at 141.)

Plaintiff applied to the Board again in 2013, submitting two applications dated January

31, 2013, (AR at 18), and December 6, 2013, (AR at 31), both of which requested

reconsideration of his previous application and demanded that the Board change his discharge

records to reflect a medical, as opposed to honorable and administrative, discharge, (AR at 14).

The Board subsequently denied Plaintiff's request for reconsideration on June 27, 2014. (AR at

14-17.) In its written decision, the Board explained that "[it] remained unconvinced that

[Plaintiff] has been a victim of an error or injustice." (AR at 16.) And further, the Board

"remain[ed] unpersuaded [that] the record raises issues of error or injustice which require

resolution on the merits." (AR at 16.) The Board concluded that "the evidence [that Plaintiff

provided] did not meet the criteria for reconsideration and the application will only be

reconsidered upon the submission of newly discovered relevant evidence not considered with

this application." (AR at 17.)

Plaintiff submitted another application to the Board on June 10, 2015, (AR at 45), which

the Board regarded as a second request for reconsideration, (AR at 9). The Board again proved

unpersuaded that "the requested relief [was] warranted." (AR at 11.) The Board explained that

"the evidence [that Plaintiff] presented did not demonstrate the existence of material error or

injustice . . . and the application will only be reconsidered upon the submission of newly discovered relevant evidence not considered with [the] application." (AR at 12.)

Plaintiff filed his third, and final, reconsideration request with the Board on May 10, 2017. (AR at 2.) The Board denied Plaintiff's request on September 25, 2018, explaining that it had "determined [that Plaintiff's request] contain[ed] no new relevant evidence and therefore does not meet the criteria for reconsideration." (AR at 1.) The Board added that "[a]bsent judicial action, the Air Force considers the [Board's] decision ... final." (AR at 2.)

### B.    Plaintiff's Complaint.

Following the Board's denial of his third request for reconsideration, on January 14, 2019, Plaintiff filed the instant suit against the Board, seeking judicial review of his discharge records for "accuracy and fairness" and "the correction of discrepancies and errors." (Compl. ¶ 4.) The Court interprets Plaintiff's Complaint as seeking judicial review, pursuant to the APA, of the Board's decision to deny his application as untimely and its conclusion that it was not in the interest of justice to excuse his untimeliness.

### C.    Defendant's Motions.

In response to Plaintiff's Complaint, on March 18, 2019, Defendant filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (ECF Nos. 9, 10.) In support of its Motions, Defendant first argues that pursuant to Rule 12(b)(6), Plaintiff's Complaint should be dismissed as time-barred, because Plaintiff filed his Complaint beyond the six-year limitations period set forth in 28 U.S.C. § 2401(a). (Mem. in Supp. of Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mem.") (ECF No. 11) at 15.) In the alternative, Defendant asserts that the Court should grant summary judgment in its favor because there is "no genuine

issue of material fact and [Defendant] is entitled to judgment as a matter of law."  (Def.'s Mem. at 15.)

Plaintiff filed a Response in Opposition to Defendant's Motions on March 25, 2019, (Mem. in Supp. of Pl.'s Mot. to Opp. Dismissal & to Pursue a State Pros. ("Pl.'s Mem.") (ECF No. 13)), to which Defendant filed its Reply on March 29, 2019, (Reply Br. in Supp. of Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Reply") (ECF No. 14)).  Plaintiff subsequently filed another Response to Defendant's Reply on April 3, 2019, (Pl.'s Reply Br. in Supp. of Pl.'s Mot. to Opp. Dismissal & to Pursue a State Pros. ("Pl.'s Reply") (ECF No. 15)), rendering Defendant's Motions now ripe for review.

## II.      RULE 12(b)(6) MOTION TO DISMISS

Because Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) determines the plausibility of Plaintiff's claims, the Court will consider that Motion before resolving Defendant's Motion for Summary Judgment.

### A.      Standard of Review.

A motion to dismiss pursuant to Rule 12(b)(6) tests sufficiency of a complaint or a counterclaim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the

6

speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Twombly*, 550 U.S. at 544.

Relevant here, although a motion to dismiss filed pursuant to Rule 12(b)(6) typically may not address the merits of any affirmative defenses, in certain circumstances "where facts sufficient to rule on the affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.* 494 F.3d 458, 464 (4th Cir. 2007) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst* 4 F.3d 244, 250 (4th Cir. 1993)). This principle applies only when "all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." *Goodman*, 494 F.3d at 464 (internal quotation marks omitted).

## B.    Analysis.

Defendant contends that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted. (Def.'s Mem. at 14.) In support of its Motion, Defendant argues that Plaintiff's claim is barred by the six-year limitations period set forth in 28 U.S.C. § 2401(a). (Def.'s Mem. at 15.) Based on this limitations period, Defendant avers that because the Board denied Plaintiff's initial petition on June 23, 2011, Plaintiff's right to file for judicial review of that decision expired on June 23, 2017. (Def.'s Mem. at 16.) Defendant adds that the statute of limitations did not toll while Plaintiff continued to apply for reconsideration. (Def.'s Mem. at 15-17.) Plaintiff responds that he has "met his obligation [at the motion to dismiss stage] by providing the grounds for [his] entitlement to relief." (Pl.'s Mem. at 1.)

28 U.S.C. § 2401(a) provides in relevant part that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." "Conduct becomes reviewable under the APA upon 'final agency

decision.'" *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir.1999) (citing 5 U.S.C. § 704).  Final agency decision means "when the agency has completed its decision-making process, and when the result of that process is one that will directly affect the parties."  *Id.* (citing *Franklin v. Mass.*, 505 U.S. 788, 797 (1992)).  Pursuant to this legal framework, the relevant questions become:  (1) whether the Board's initial denial of Plaintiff's application constitutes the final agency decision for purposes of the statute of limitations; and, (2) whether Plaintiff's applications for reconsideration tolled the limitations period.

The Fourth Circuit has yet to address these questions and a review of other circuit and district court opinions reveals a diverse array of approaches.  For example, the Seventh Circuit has previously held that the statute of limitations begins to run at the time of the Board's original decision and that additional requests for reconsideration do not toll the statute.  *Soble v. Amy Bd. for Corr. of Military Records*, 151 F.3d 1033 (7th Cir. 2013).

In another approach, the District Court for the District of Columbia held that the statute of limitations may be tolled in instances where a plaintiff applies for reconsideration to the Board within six years of the original adverse ruling.  *See Nihiser v. White*, 211 F. Supp. 2d 125, 129 (D.D.C. July 16, 2002) (holding, without reference to military review board regulations, that the period for filing suit remains tolled if a plaintiff applies to the Board for reconsideration within the six-year statute of limitations set forth in § 2401(a), but that if the plaintiff does not file her application within that period, the statute of limitations begins on the date of the original denial).

The Third Circuit has adopted yet another approach, holding that "any petition for rehearing to the [Army Board] which does not include 'new evidence' or reflect some 'changed circumstances' does not re-start the six-year statute of limitations."  *Green v. White*, 319 F.3d 560, 566 (3d Cir. 2003).  The Third Circuit in *Green* further clarified that if the Board "re-opens

8

a proceeding and rules upon a petition that does contain such new evidence, such a ruling will constitute a final agency action and will re-start the six-year time limit," even if the veteran filed for reconsideration more than six years following the Board's original decision. *Id.*

Finally, the Sixth Circuit has articulated its own rule that considers "the regulations outlining the structure and purpose of the Board's review." *Davis v. United States*, 589 F.3d 861, 864 (6th Cir. 2009). Specifically, the Sixth Circuit in *Davis* stated that:

> [T]he statute of limitations is tolled during the processing of a *timely* request for reconsideration, but we note that this holding does not require a veteran to request reconsideration of the original Board decision in order for his or her claim to be considered exhausted. A claim will be considered exhausted either after the Board's original decision, if there is no request for reconsideration, or after a denial of a *timely* request for reconsideration.

*Id.* at 865 (emphasis added). In applying this rule and holding that the limitations period had run on the plaintiff's claim, the Sixth Circuit explained that "[t]he key fact is that Davis did not apply for reconsideration within the one year required by the [Army] regulations." *Id.* Notably, the Sixth Circuit relied on Army regulations which dictate an applicant's request for reconsideration. *Id.* In relevant part, those regulations explain:

> (i) If the [Army Board] receives the request for reconsideration within 1 year of the [its] original decision and if [it] has not previously reconsidered the matter, the [Army Board] staff will review the request to determine if it contains evidence (including, but not limited to, any facts or arguments as to why relief should be granted) that was not in the record at the time of [its] prior consideration. ... If no new evidence is found, the [Army Board] staff will return the application to the applicant without action. ...
>
> (ii) If the [Army Board] receives a request for reconsideration more than 1 year after [its] original decision or after [it] has already considered one request for reconsideration, then the case will be returned without action and the applicant will be advised the next remedy is appeal to a court of appropriate jurisdiction.

32 C.F.R. § 581.3. The Sixth Circuit held that "because [the plaintiff] did not raise his petition for rehearing to the [Army] Board until after the time allotted by the regulations, he was not

9

legitimately still pursuing military administrative remedies." *Davis*, 589 F.3d at 685. Because the plaintiff was not "legitimately still pursuing military administrative remedies," the statute of limitations continued to run and, ultimately, his federal claim proved time barred pursuant to 28 U.S.C. § 2401(a). *Id.*

In crafting its own rule, the Sixth Circuit considered the rules of other circuits and explained its decision to divert from those holdings. First, the court astutely pointed out that the Seventh Circuit, in disregarding all requests for reconsideration, ignored the reality that "the regulations explicitly allow a veteran to file for reconsideration with the Board," which proves inapposite to the purpose and framework of military review boards. *Id.* at 864. Furthermore, the *Davis* court viewed with apprehension the Third Circuit's holding that a request for reconsideration *might* toll the statute of limitations depending on the new evidence presented, reasoning that "[w]hether a request contains new facts or law may be a complex question for the Board to decide and does not serve as a clear criterion for tolling." *Id.*

Considering the above approaches, the Court finds the Sixth Circuit's holding in *Davis* to be persuasive.[3] Although the Court recognizes Defendant's argument that if reconsideration requests could perpetually toll the statute of limitations, "applicants before correction boards could rack up causes of action and extend the statute of limitations indefinitely simply by reapplying repeatedly and being denied over and over again," (Def.'s Mem. at 16 (citing *Lee v. Wynn*, 2009 WL 2709349 (W.D. La. Aug. 26, 2009)), the framework set forth in *Davis*, and applied here, takes into consideration military regulations that limit the tolling period.

---

[3]     Notably, the District of Maryland has also applied the Sixth Circuit's approach. *Lanier-Finn*, 963 F. Supp. 2d at 483-84.

10

Indeed, like the Army regulations cited in *Davis*, the Air Force regulations applicable here also delineate a reconsideration period for Board decisions. Specifically, Air Force Instruction ("AFI") 36-2603 provides that:

> 6. … The Board may reconsider an application if the applicant, within 3 years of the original decision, submits newly discovered relevant evidence that was not reasonably available when the application was previously considered. …
>
> 6.3. If the [Board] receives a request for reconsideration more than 3 years after the Board's original decision, the case will be returned without action and the applicant will be advised the next remedy is appeal to a court of appropriate jurisdiction.

AFI 36-2603 ¶ 6 (Sept. 18, 2017), https://static.e-publishing.af.mil/production/1/saf_mr/publication/afi36-2603/afi36-2603.pdf. Therefore, like the Army regulations applicable in *Davis*, the Air Force has also provided a prescribed time period during which applicants may challenge the Board's initial denial — three years. *Id.* Furthermore, in its initial denial, the Board explicitly told Plaintiff that he had "the right to submit newly discovered relevant evidence for consideration by the Board." (AR at 137.)

Due to the explicit allowance for reconsideration outlined in AFI 36-2603 and explained in the Board's initial decision, if a veteran, such as Plaintiff, chooses to bring a timely reconsideration request within the three-year period, the statute of limitations for judicial review remains tolled pending reconsideration. If, however, the veteran fails to bring a timely request for reconsideration, the statute of limitations begins at the issuance of the Board's initial decision. AFI ¶ 36-2603; 28 U.S.C. § 2401(a); *see also, e.g., Lanier-Finn*, 963 F. Supp. 2d at 484 (holding that the plaintiff, an Army veteran, applied for reconsideration outside the statutorily prescribed timeframe and, as such, the statute of limitations began on the date of the Army Board's original denial).

11

Here, the Board denied Plaintiff's original Application for Correction of Military Records on June 23, 2011. (AR at 141.) Plaintiff then, well within the allowed three-year period, applied for reconsideration in 2013. (AR at 14-17.) The Board denied Plaintiff's application for reconsideration on June 27, 2014. (AR at 14-17.) Plaintiff filed his initial request for reconsideration within the three-year reconsideration window provided by AFI 36-2603 and was therefore "legitimately still pursuing military administrative remedies." *Davis*, 589 F.3d at 865. Accordingly, the statute of limitations remained tolled until the Board's June 27, 2014 reconsideration denial. Plaintiff filed his Complaint within six years of June 27, 2014, and has therefore made a timely request for judicial review.[4] 28 U.S.C. § 2401(a). As such, the Court recommends that Defendant's Motion to Dismiss (ECF No. 9) be denied.

## III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Because the Court finds that Plaintiff's claim should not be dismissed as untimely, the Court next turns to Defendant's Motion for Summary Judgment.

### A.   Standard of Review.

Pursuant to Federal Rule of Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, the ordinary summary judgment standard does not altogether apply in cases brought pursuant to the APA, because the APA limits judicial review of agency decisions to the underlying administrative record. 5 U.S.C.

---

[4]   Because Plaintiff filed his initial request for reconsideration within the three-year period provided by the AFI, and because the Board's decision on Plaintiff's timely reconsideration request falls within the six-year limitations period, the Court need not consider the potential tolling effects of subsequent reconsideration requests.

§ 706. Because the underlying administrative record sets forth all of the relevant facts, unless the record is somehow contradicted, "the presence or absence of a genuine dispute of material fact is not an issue." *LivinRite, Inc.*, 386 F. Supp. at 650 (quoting *Hyatt v. U.S. Patent & Trademark Office*, 146 F. Supp. 3d 771, 780 (E.D. Va. 2015)).

Consequently, "[a] court conducting judicial review under the APA does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Hoffler v. Hagel*, 122 F. Supp. 3d 438, 446 (E.D.N.C. 2015) (citing *Ohio Valley Envtl. Coal. v. Hurst*, 604 F. Supp. 2d 860, 879 (S.D. W. Va. 2009)). Pursuant to the APA, agency decisions should be set aside only "if they are arbitrary, capricious, or not based on substantial evidence." *Id.* (quoting *Chappell v. Wallace*, 462 U.S. 296, 303 (1983)).[5] A reviewing court must determine whether "the Board's written opinion made a 'rational connection' between that evidence and its conclusion." *Downey v. U.S. Dep't of the Army,* 110 F. Supp. 3d 676, 687 (E.D. Va. 2015) (quoting *Ohio Valley Envtl. Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)). While "the [reviewing] court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made," *Aracoma Coal Co.*, 556 F. 3d at 192, the reviewing court is not "empowered to substitute its judgment for that of the agency." *Sumter Tours, Inc. v. Babbitt,* 66 F. 3d 1324, 1335 (4th Cir. 1995) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

Relevant here, courts engaging in judicial review of military review board decisions generally apply an "unusually deferential application of the arbitrary or capricious standard of

---

[5]    Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Platone v. U.S. Dept. of Labor*, 548 F.3d 322, 326 (4th Cir. 2008).

the APA." *Downey*, 110 F. Supp. 3d at 686 (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)).  Such a deferential standard ensures that courts do not become "a forum for appeals by every soldier dissatisfied with [a review board's decision], a result that would destabilize military command and take the judiciary far afield of its area of competence." *Id.* at 686-87 (citing *Cone*, 223 F.3d at 793).

Based on this legal framework, the Court finds that the Board's decision was neither arbitrary nor capricious and, further, that substantial evidence supports the Board's decision to deny Plaintiff's initial application as untimely and to hold that it was not in the interest of justice to waive that untimeliness.

**B.     Analysis.**

As a threshold matter, the Court finds that the Board's 2011 initial denial constitutes the final decision of the Board subject to judicial review.  Upon initial denial of Plaintiff's application, the Air Force explained that Plaintiff had the right to "submit newly discovered relevant evidence for consideration by the board," but that, "in the absence of such additional evidence, further review of [the] application is not appropriate." (AR at 137.)  Although Plaintiff filed three requests for reconsideration, the Board denied each request for failure to meet the criteria for reconsideration, rendering the Board's original decision final.  Accordingly, the Court will review the Board's initial decision in resolving Defendant's Motion for Summary Judgment.

To that end, the Court finds that the Board correctly determined that Plaintiff did not timely file his initial application for correction of his military records. (AR at 141.)  Pursuant to 10 U.S.C. § 1552(b), the Board may not correct military records unless the claimant "files a request for the correction within three years after discovering the error or injustice."  Therefore, "an applicant for correction of military records whose request is not made within this three-year

14

period loses the right to have the substance of his or her claim resolved." *McFarlane v. Sec'y of Air Force*, 867 F. Supp. 405, 410 (E.D. Va. 1994).

The Air Force honorably discharged Plaintiff on December 2, 1975. (AR at 54-55.) Plaintiff then waited nearly thirty-five years to apply for the correction of his discharge status, finally applying on August 18, 2010. (AR at 138.) Other courts within this district have held that "the proper inquiry for time bar purposes is when the alleged error or injustice was discovered, or reasonably could have been discovered." *McFarlane*, 867 F. Supp. at 411; *see also Townsend v. Sec'y of Air Force*, 1991 WL 232063, at *2 (4th Cir. Nov. 12, 1991) ("A statute of limitations commences once an individual knows of the wrongful conduct, even if the consequences of that conduct are not yet known."). Plaintiff's claim for the correction of his discharge status would have been known for well over the three-year period during which he could assert an error or injustice. Indeed, Plaintiff would have discovered, or reasonably could have discovered, this alleged error around the time of his discharge — nearly thirty-five years before his application date.

"But all is not lost if an application is untimely, for the Board still 'may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.'" *McFarlane*, 867 F. Supp. at 410. Because Plaintiff clearly filed his application beyond the allotted three years, the crux of the issue on summary judgment surrounds the Board's decision not to waive Plaintiff's untimeliness.

In its June 23, 2011 written decision, the Board concluded that "[Plaintiff] has not shown a plausible reason for the delay in filing, and we are not persuaded that the record raises issues of error or injustice which require resolution on the merits." (AR at 141.) Therefore, the Board determined, "it would not be in the interest of justice to excuse [Plaintiff's] failure to file in a

timely manner." (AR at 141.)  In support of this conclusion, the Board first outlined Plaintiff's

military history, noting that Plaintiff enlisted in the Air Force in 1969 and rose to the rank of

sergeant in November 1971.  (AR at 139.)  On November 5, 1975, Plaintiff's commander

notified Plaintiff of his intent to recommend Plaintiff's discharge "for a character and behavior

disorder" pursuant to AFM § 39-12.  (AR at 139.)  On November 19, 1975, after having

consulted with legal counsel, Plaintiff waived his right to a hearing before an administrative

discharge board, deciding instead to submit statements on his own behalf.  (AR at 139.)  The

case for discharge proved legally sufficient, and the discharge authority approved the

commander's recommendation on December 1, 1975.  (AR at 139.)  The Air Force honorably

discharged Plaintiff on December 2, 1975.  (AR at 139.)

      In refusing to excuse Plaintiff's untimeliness, the Board also relied on the

recommendation of the Board's Medical Consultant (the "BMC").  (AR at 139.)  After reviewing

Plaintiff's case file — including performance reports, profiles and mental health progress notes

— the BMC recommended denial of Plaintiff's application, because "there is no evidence of an

error or injustice."  (AR at 139.)  In support of this recommendation, the BMC noted that

Plaintiff's military records "highlight a reoccurring pattern of inappropriate behavior toward

superiors and immediate supervisors at various duty stations throughout the enlistment period."

(AR at 139.)  Further, the BMC explained that "[t]he plethora of mental health evaluations

during the enlistment period was likely due to a recurring personality disorder . . . without overt

psychosis or a psychiatric disorder as defined by AFM 35-4."  (AR at 140.)  Although the BMC

acknowledged Plaintiff's assertion that he should have been medically discharged based on a

pre-court martial Sanity Board finding, the BMC concluded that the Sanity Board took the

proper action when it referred Plaintiff for further psychiatric evaluation.  (AR at 140.)

16

Importantly, the BMC reported that after extensive further evaluation, the Air Force psychiatrist "concluded that . . . [Plaintiff] exhibited traits of a paranoid personality disorder." (AR at 140.) The BMC opined that because of "persistent behavior and performance deficiencies," the Air Force appropriately discharged Plaintiff pursuant to AFM § 39-12, which provides that "[a]n airman is subject to [administrative] discharge for unsuitability when one or more of the conditions noted below exist . . . [including] Personality disorder." (AR at 140 (citing AFM § 39-12).)

In considering Plaintiff's application, the Board further considered Plaintiff's claims and provided Plaintiff an opportunity to respond to the Air Force's evaluation. (AR at 140.) In his response, Plaintiff asserted that the Air Force discharged him for a personality disorder so that the Department of Veterans Affairs would not have to provide healthcare or disability compensation. (AR at 140.) Plaintiff further responded that the Air Force told an untruthful version of events and that the government completed sloppy paperwork. (AR at 140.)

The Court finds that the Board's decision to deny Plaintiff's Application for Correction of Military Records was neither arbitrary nor capricious and, further, that substantial evidence supports the Board's determination that "it would not be in the interest of justice to excuse [Plaintiff's] failure to file in a timely manner." (AR at 141.) Indeed, the Board's written opinion demonstrated a rational connection between the evidence in the record and the Board's ultimate conclusion.

First, as the Board appropriately explained, Plaintiff did not articulate any reason for his delay in filing his initial application. (AR at 141-42.) The application for correction allows an applicant to explain any delay in filing, explicitly providing the applicant a box in which he can "state why the board should find it in the interest of justice to consider the application" if more

than three years have passed since the alleged error or injustice.  (AR at 142.)  Plaintiff failed to

include any plausible reasons for his delay in filing — indeed, he left this box completely blank.

(AR at 142.)

Furthermore, the clinical records upon which the Board relied support the Board's

determination that no medical justification existed for recommending a change in Plaintiff's

discharge.  On February 11, 1975, the Air Force requested that a Sanity Board review Plaintiff's

mental status in relation to an upcoming court-martial.  (AR at 24.)  Plaintiff presented to USAF

Hospital Clark ("Clark") for these examinations.  (AR at 24.)  During his time at Clark,

Plaintiff's treatment providers diagnosed him with a "paranoid personality with psychotic

features."  (AR at 167.)  The doctors at Clark concluded that Plaintiff had a "significant mental

disorder which could benefit from treatment and [that] under stress [Plaintiff] could become

psychotic."  (AR at 167.)  In particular, the Sanity Board appeared concerned that Plaintiff might

"decompensate" under the stress of the court-martial.  (AR at 167.)  Following the Sanity Board

evaluation, the Air Force referred Plaintiff to another hospital for "further treatment and

evaluation."  (AR at 167.)

The Air Force admitted Plaintiff to USAF Medical Center Wright-Patterson ("Wright-

Patterson") on March 24, 1975, where he remained under close observation for fifty-six days.

(AR at 170.)  Upon admission, Plaintiff appeared alert, oriented and soft spoken, with some

evidence of anxiety and guardedness.  (AR at 170.)  Records indicate that Plaintiff's "affect was

somewhat flattened and he talked with obsessive details about" his life.  (AR at 170.)  Alvin R.

Blank, M.D., reported that Plaintiff proved "highly intellectualized and showed a limited range

of affects other than laughter and occasional anxious smiling."  (AR at 170.)  Dr. Blank further

explained that Plaintiff "expressed feelings that certain people are 'out to get him' but [that] this feeling was not part of a well-formed delusion." (AR at 170.)

Dr. Blank explained that the "main purpose in keeping [Plaintiff] in the hospital was to rule out a clearly psychotic or schizophrenic process in a man who is obviously very paranoid." (AR at 172.) Dr. Blank further noted that when he told Plaintiff that he did not "automatically accept the diagnosis that the doctors at Clark had made," Plaintiff became irate and threatened to complain about the quality of treatment. (AR at 172.) During Plaintiff's fifty-six-day stay at Wright-Patterson, Plaintiff did not receive any medications. (AR at 172.) Although doctors did note that Plaintiff's "concreteness and paranoia occasionally bordered on a loss of reality testing that *approached* psychosis," Plaintiff did not "show *any* evidence of overt schizophrenic or psychotic processes." (AR at 172 (emphasis added)). Doctors ultimately diagnosed Plaintiff with "Paranoid personality, severe, manifested by hypersensitivity, rigidity, unwarranted suspicion, jealousy, excessive self-importance, and a tendency to blame others and ascribe evil motives to them." (AR at 172.)

Dr. Blank reported that Plaintiff "exhibit[ed] a severe personality disorder as defined in the Diagnostic and Statistical Manual of American Psychiatric Association."[6] (AR at 173.) Indeed, the record noted that the clinical definition "fit [Plaintiff's] behavior very clearly." (AR. At 173.) Dr. Blank concluded:

> Since there is *no evidence* of any clear psychotic episodes or symptoms nor evidences of schizophrenia, this man's condition does not fall under the provisions of AFM 35-4 and, therefore he is being returned to duty at this time. Should his

---

[6]    Personality Disorders, as defined in the clinical report and the Diagnostic and Statistical Manual of American Psychiatric Association (DSM-2) referenced therein, are a group of disorders "characterized by deeply ingrained maladaptive patterns of behavior that are perceptibly different in quality from psychotic and neurotic symptoms. Generally, these are life-long patterns." *Personality Disorders and Certain Other Non-Psychotic Mental Disorders,* Diagnostic and Statistical Manual of American Psychiatric Association (2d ed. 1968).

difficulties persist they should be dealt with through the appropriate *non-medical* procedures and regulations.

Since the condition of paranoid personality does not fall within AFM 35-4, I am having his profile, which I believe was made a S-4T[7] while he was at Clark, revised to the appropriate profile of S-1.[8]

(AR at 173 (emphasis added).)  The physicians at Wright-Patterson ultimately discharged Plaintiff on May 14, 1975.  (AR at 173.)  Plaintiff's commanding officer eventually recommended that Plaintiff be administratively discharged pursuant to AFM § 39-12 due to his severe paranoid personality disorder as determined by the doctors at Wright-Patterson.  (AR at 93.)  The Air Force honorably discharged Plaintiff on December 2, 1975.  (AR at 139.)

AFM § 39-12 explicitly provides that an Airman is subject to administrative discharge for unsuitability when certain conditions are present, including "[p]ersonality disorder . . . which interferes with the member's ability to adequately perform duties." AFM § 39-12. The underlying clinical records indicate that Plaintiff's medical condition fit squarely within the relevant discharge category.

Ultimately, the decision to waive an untimely filing in the interest of justice falls within the Board's discretion. Plaintiff did not provide the Board with any plausible reason for his delay in filing, and the administrative record substantially supports the Board's conclusion that no error existed that warranted a waiver of Plaintiff's untimeliness.  Therefore, the Court finds

---

[7]     "S-4T" describes "[n]ot worldwide qualified and/or diagnosis or treatment result in high to extremely high risk to the Air Force or patient due to potential impairment of duty function, risk to the mission or ability to maintain security clearance. This includes conditions in which operational risk is yet unclear." AFI 48-123.

[8]     "S-1" describes a "[d]iagnosis or treatment [with] no impairment or potential impairment of duty function, risk to the mission or ability to maintain security clearance." AFI 48-123.

that the Board did not err in its decision to deny Plaintiff's initial application for correction.[9] For the above reasons, the Court recommends that Defendant's Motion for Summary Judgment (ECF No. 10) be granted.

## IV.   CONCLUSION

For the reasons set forth above, the Court recommends that Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 9) be DENIED and that Defendant's Motion for Summary Judgment (ECF No. 10) be GRANTED.

Let the Clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne, all counsel of record and to Plaintiff at his address of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: September 24, 2019

---

[9]     To the extent that Plaintiff challenges the Board's continued decisions to deny his requests to reopen and reconsider his initial application, the Court agrees with the Board's finding that Plaintiff submitted no new relevant evidence that warranted reconsideration.